## AFFIDAVIT OF SPECIAL AGENT JOHN MERCER

I, Special Agent John Mercer, depose and state as follows:

1. I am presently a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and have been employed as such for approximately 33 years. I am currently assigned to work with other federal, state, and local law enforcement agencies in a task force effort focusing on federal firearms, explosives and controlled substance violations. Based on my training and experience as an ATF special agent, I am familiar with federal firearms and narcotics laws.

2. I make this affidavit in support of an application for arrest warrants for Rafaell Martins FERREIRA ("FERREIRA"), Vanderson Rocha OLIVEIRA ("OLIVEIRA), and Marcos Alves SILVA ("SILVA") for federal firearms violations.

3. There is probable cause to believe that FERREIRA, OLIVEIRA, and SILVA have committed the following federal crimes: (1) engaging in the business of dealing in firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A) and (2) conspiracy to engage in the business of dealing firearms without a license in violation of 18 U.S.C. § 371.

4. During this investigation, two Cooperating Witnesses ("CW-1" & "CW-2") made controlled purchases of commercially-manufactured firearms and ammunition as well as Privately Made Firearms ("PMF"), which sometimes referred to as "ghost guns." Unlike commercially-manufactured firearms, a PMF does not have a serial number. Based on my training and experience, a PMF satisfies the definition of "firearm" for the purposes of 18 U.S.C. § 922(a)(1)(A).

5. CW-1 has requested that his/her identity not be revealed for fear of reprisal or harm to his/her physical safety. I am aware of CW-1's identity and have met with CW-1 personally. CW-1 has provided accurate, truthful, and reliable information to law enforcement, including the ATF and Homeland Security Investigations ("HSI"), and local police departments in the past and continues to do so to the present. CW-1 has a criminal history which includes one arrest and no convictions. CW-1 is presently receiving monetary and immigration benefits from the ATF. CW-1 is also seeking protection from retaliation based upon CW-1's cooperation with law enforcement in this case, including possible relocation.

6. CW-2 has requested that his/her identity not be revealed for fear of reprisal or harm to his/her physical safety. I am aware of CW-2's identity and have met with CW-2 personally. CW-2 has provided accurate, truthful, and reliable information to law enforcement, including the ATF and HSI, and local police departments in the past and continues to do so to the present. CW-2 has a criminal history which includes ten adult arrests and no convictions. CW-2 is presently receiving monetary benefits from the ATF. CW-2 is also seeking protection from retaliation based upon CW-2's cooperation with law enforcement in this case, including possible relocation.

7. I have conducted and been involved in hundreds of firearm-related investigations, arrests, seizures, undercover operations and search warrants. I have written and/or participated in the execution of numerous state and federal search warrants, and have debriefed hundreds of defendants, informants, and witnesses with personal knowledge regarding illegal firearms possession and trafficking activities and the operation of firearms trafficking organizations. I have also received training through my position as an ATF Special Agent involving firearms

trafficking. Based upon my training and experience, I am familiar with firearms traffickers' methods of operation, including acquisition, manufacture, distribution, storage, and transportation of firearms.

8. The information contained in this affidavit is based on my own investigation, oral and written reports by other law enforcement officers, physical surveillance, information from confidential informants, public records, database checks, and other investigations. The dates and times in this affidavit are approximate. Because this affidavit is submitted for the limited purpose of supporting issuance of arrest warrants for FERREIRA, OLIVIERA, and SILVA, I have not presented every fact learned during the investigation, but only that information necessary to fully support probable cause for arrest warrants.

9. During the second week of February 2024, CW-2 informed investigators that FERREIRA, OLIVEIRA and a fourth individual were trafficking firearms in the Worcester/Milford, Massachusetts area, as well as being involved in drug trafficking.

10. On February 18, 2024, FERREIRA electronically sent CW-2 a text image of a PMF 9mm pistol, a loaded extended magazine, and an empty magazine. CW-2 and FERREIRA negotiated a price of $1000 for the group. FERREIRA directed the CWs to meet him at 27 Grove Street, Milford, MA on February 20, 2024.

11. On February 20, 2024, CW-1 and CW-2 made a controlled purchase of a 9mm pistol and ammunition from FERREIRA and the fourth individual (who has been identified) in Hopedale, Massachusetts. Prior to the controlled purchase, ATF agents met with and searched CW-1 and CW-2 for contraband with negative results. Agents equipped CW-1 and CW-2 with an undercover ("UC") vehicle and a recording device which recorded both audio and video; the

device worked properly and recorded the transaction with FERREIRA and the fourth individual. Agents then provided CW-1 with official government funds in to do the transaction. Surveillance personnel were assigned to the area of 27 Grove Street, Milford, Massachusetts and 16 Dutcher Street, Hopedale, Massachusetts. CW-1 and CW-2 were under constant surveillance by agents/officers during the operation. CW-1 (driver) and CW-2 (rear passenger) drove to 27 Grove Street, Milford, Massachusetts. Surveillance personnel observed FERREIRA exit 27 Grove Street – which is a multi-family residence – and proceed to the UC vehicle. FERREIRA sat in the front passenger seat of the UC vehicle. The CWs had a brief discussion with FERREIRA and learned that the pistol was at 16 Dutcher Street, Hopedale, Massachusetts. FERREIRA called his associate (the fourth individual) via FaceTime and the fourth individual showed the CWs the pistol. The CWs and FERREIRA drove to 16 Dutcher Street. FERREIRA briefly exited the vehicle and then returned with the fourth individual. FERREIRA sat in the front passenger seat and the fourth individual sat in the rear passenger seat. The fourth individual showed the CWs the pistol, magazines and ammunition. CW-1 handed the fourth individual $1000. The fourth individual spoke about how he had to go to court and had to be careful. They all agreed to do additional business in the future. After the transaction, CW-1 and CW-2 and surveillance personnel observed FERREIRA and the fourth individual exit the UC vehicle and enter 16 Dutcher Street. CW-1 and CW-2 left the area and were kept under surveillance as they proceeded to a prearranged meeting site. At the meeting site, CW-1 provided agents with a Polymer 80 (Privately Made Firearm), model PF940C, 9mm pistol, no serial number, a Glock 9mm magazine, an extended large capacity magazine, and twenty-two (22) rounds of Armscor 9mm ammunition. Agents again searched CW-1 and CW-2 for contraband and found none. I have reviewed the recording

of the transaction, which confirmed CW-1 and CW-2's account that CW-1 purchased the pistol and ammunition from FERREIRA and the fourth individual.

12. On March 9, 2024, OLIVEIRA sent CW-2 a text picture of two PMF 9mm pistols and indicated he had one of them available for sale. CW-2 and OLIVEIRA negotiated a price of $1900. OLIVEIRA directed the CWs to meet him at 27 Grove Street, Milford, MA on March 11, 2024 – the same location where the prior firearms transaction had been consummated as discussed above.

13. On March 11, 2024, CW-1 and CW-2 made a controlled purchase of a 9mm pistol and ammunition from FERREIRA and OLIVEIRA in Milford, Massachusetts. Prior to the controlled purchase, ATF agents met with and searched CW-1 and CW-2 for contraband with negative results. Agents equipped CW-1 and CW-2 with a UC vehicle and a recording device which recorded both audio and video; the device worked properly and recorded the transaction. Agents then provided CW-1 with official government funds to purchase the pistol and ammunition. Surveillance personnel were assigned to the area of 27 Grove Street, Milford, Massachusetts. CW-1 and CW-2 were under constant surveillance by agents/officers during the operation. CW-1 and CW-2 observed FERREIRA exit 27 Grove Street. CW-2 observed OLIVEIRA in the bedroom window of 27 Grove Street (1st floor - left apartment) and they waved to each other. CW-1 and CW-2 met with FERREIRA in the UC vehicle and purchased a 9mm pistol and ammunition. CW-1 paid FERREIRA $1900 for the pistol and ammunition. FERREIRA told the CWs that he and his associates had access to additional handguns and rifles. FERREIRA sent CW-2 a text image of a Smith and Wesson pistol and told the CWs he wanted $2000. After the transaction, CW-1 and CW-2 observed FERREIRA return to 27 Grove Street. CW-1 and CW-2

left the area and was kept under surveillance as they proceeded to a prearranged meeting site. At the meeting site, CW-1 provided agents with a Polymer 80 (PMF), Model PF940C, 9mm pistol, no serial number and four (4) rounds of assorted 9mm ammunition (one round of Blazer/CCI, one round of A USA/Armscor, and 2 rounds of MXT/M-90 Bosnia-Herzegovina). Agents again searched CW-1 and CW-2 for contraband and found none. I have reviewed the recording of the transaction, which confirmed CW-1 and CW-2's account that they purchased the pistol and ammunition from FERREIRA during the transaction initially arranged by OLIVEIRA.

14. On April 12, 2024, OLIVEIRA sent CW-2 a USPS tracking number 9505 5122 3223 4092 9966 39 via WhatsApp instant messaging. OLIVEIRA told CW-2 that the package contained an AR-style rifle, a pistol grip shotgun and a 9mm pistol. OLIVEIRA reported that the firearms were coming from his source of supply in Jacksonville, Florida. CW-2 agreed to purchase all three firearms for $5500 when they arrived in Massachusetts.

15. On April 16, 2024, OLIVEIRA sent CW-2 a text picture of an AK-style rifle, three loaded large capacity magazines and a large capacity drum magazine. OLIVEIRA initially told CW-2 that OLIVEIRA wanted $4000 for the firearm and other materials. The CW and OLIVEIRA eventually negotiated a price of $3000. CW-2 arranged to meet OLIVEIRA at 27 Grove Street, Milford, Massachusetts the next day at 1:00 p.m. CW-2 exchanged WhatsApp instant messages and voice messages with OLIVEIRA leading up to the buy.

16. On April 17, 2024, CW-2 made a controlled purchase of an AK-style rifle, four high-capacity magazines, and ammunition from OLIVEIRA in Milford, Massachusetts. Prior to the controlled purchase, ATF agents met with and searched CW-2 for contraband with negative results. Agents equipped CW-2 with a UC vehicle and a recording device which recorded both

audio and video; the device worked properly and recorded the transaction with OLIVEIRA. Agents then provided CW-2 with official government funds to purchase the rifle and other materials. Surveillance personnel were assigned to the area of the 27 Grove Street, Milford, Massachusetts. CW-2 was under constant surveillance by agents/officers during the operation. CW-2 observed OLIVEIRA exit 27 Grove Street. CW-2 met with OLIVEIRA in the UC vehicle and purchased an AK-style rifle, four high-capacity magazines, and ammunition. CW-2 paid OLIVEIRA $3000 for the rifle, magazines and ammunition. OLIVEIRA told CW-2 that he was going to Gloucester to pick up the three firearms that were mailed to him from Florida. OLIVEIRA asked CW-2 if he/she wanted to buy the guns today. CW-2 told OLIVEIRA to call him/her when OLIVEIRA had them in hand. After the transaction, CW-2 observed OLIVEIRA return to 27 Grove Street. CW-2 left the area and was kept under surveillance as he/she proceeded to a prearranged meeting site. At the meeting site, CW-2 provided agents with a Century Arms, Model VSKA, 7.62x39mm, rifle, serial number SV7093016, three (3) high-capacity magazines, one (1) high-capacity, and nine (9) rounds of 7.62x39mm ammunition and a white cardboard USPS Priority Mail packing box. Agents searched CW-2 for contraband and found none. I have reviewed the recording of the transaction, which confirmed CW-2's account that he/she purchased the rifle and ammunition from OLIVEIRA.

17. On April 23, 2024, OLIVEIRA sent CW-2 text pictures and videos of four (4) pistols that OLIVEIRA was allegedly receiving from his source of supply in Jacksonville, Florida. OLIVEIRA assured CW-2 the pistols would be arriving later in the week. CW-2 exchanged calls and messages with OLIVEIRA (via WhatsApp) leading up to the buy. OLIVEIRA sent CW-2 a

picture of the alleged package which held the firearms, as well as a price list and estimated time of arrival to Milford, Massachusetts. The package was sent via United Parcel Service (UPS).

18. On April 27, 2024, CW-1 and CW-2 made a controlled purchase of three (3) pistols and ammunition from OLIVEIRA in Milford, Massachusetts. Prior to the controlled purchase, ATF agents met with and searched CW-1 and CW-2 for contraband with negative results. Agents equipped CW-1 and CW-2 with a UC vehicle and a recording device which recorded both audio and video; the device worked properly and recorded the transaction with OLIVEIRA. Agents then provided CW-1 with official government funds to purchase the pistols and ammunition. Surveillance personnel were assigned to the area of 27 Grove Street, Milford, Massachusetts. CW-1 and CW-2 were under constant surveillance by agents/officers during the operation. The CWs observed OLIVEIRA exit 27 Grove Street carrying a brown box. CW-1 and CW-2 met with OLIVEIRA in the UC vehicle and purchased three (3) pistols and ammunition. CW-1 paid OLIVEIRA $5900 for the pistols and ammunition. After the transaction, CW-1 and CW-2 observed OLIVEIRA return to 27 Grove Street. CW-1 and CW-2 left the area and were kept under surveillance as they proceeded to a prearranged meeting site. At the meeting site, CW-1 and CW-2 provided agents with a Sig Sauer, P320, .45 caliber, pistol, serial number 58K056932, a Rock Island Armory, M1911A2-FS, .45 caliber pistol, serial number RIA2444797, a Walther, PPK/S, .380 caliber pistol, serial number S067456, and six (6) rounds of Hornady .45 caliber ammunition. Agents searched CW-1 and CW-2 for contraband and found none. I have reviewed the recording of the transaction, which confirmed CW-1 and CW-2's account that they purchased the pistols and ammunition from OLIVEIRA.

19. On May 17, 2024, the United States Postal Inspection Service ("USPIS") and ATF executed Federal Search Warrant 24-8307-SRW on United States Postal Service Priority Mail parcel bearing tracking number: 9505 5122 3223 4092 9966 39 at the ATF Boston Field Division office on a package sent from SILVA to OLIVEIRA. The package contained the following items: (1) one GPI Manufacturing, SLR-15, 223/556 caliber, AR-15-style rifle, serial number S1-01316; (2) a thirty (30) round magazine; (3) twenty-nine (29) rounds of 223/556 ammunition; (4) one Shandong 1st Machine Works, Model YL12-IJ4, 12 gauge, pistol grip shotgun, serial number 0205608 loaded with five (5) rounds of Winchester 12 gauge ammunition; (5) one Tisas (ZIG), 1911 A1, 9mm, pistol, serial number T0620-20K3280, (6) three (3) magazines; and (7) seventeen (17) rounds of 9mm ammunition. The subject parcel had handwritten sender and addressee information. The subject parcel was addressed to "VandeRsom, 27 GRove St 01930 MiLFoRd, MAssAchucets [sic]," and had a return address of "MARCOS ALves, 4083 SumbeAn RD, APt 112 JAcksomviLLe FLoRidA, 32257." Thus, the package was addressed to OLIVEIRA at the TARGET LOCATION.

20. According to USPS business records, USPS Priority Mail parcel tracking number 9505 5122 3223 4092 9966 39 was shipped from a Post Office in Jacksonville, Florida to Gloucester, Massachusetts instead of its intended address of Milford, Massachusetts on April 1, 2024. The package was lost in the USPS mail stream until it arrived at the Milford, Massachusetts Post Office on May 13, 2024.

21. Further investigation revealed that SILVA queried the package utilizing the USPS tracking system on April 9, 2024, and April 12, 2024 (four times). The Internet Protocol ("IP") addresses indicated that SILVA accessed the USPS tracking system through his registered account

– Marcos Silva, 4083 Sunbeam Rd 112, Jacksonville, FL 32257, email address marcosilvanj@hotmail.com, contact phone number 908-808-1940 (which is an AT&T number registered to SILVA). Based upon a review of various public records databases, including phone carriers and internet providers, the above address in Jacksonville has been associated with SILVA.

22. On May 2, 2024, SILVA queried the package utilizing the USPS tracking system. The IP address indicated that SILVA accessed the USPS tracking system through a new registered account created on May 1, 2024. The account information indicated SILVA resided at 11529 Holton Lane, Jacksonville, FL 32257, email address marcosilvapc@comcast.net, contact phone number 904-524-2581 (which is a prepaid Tracfone). SILVA utilized his last name in the email address to create the new account.

23. On September 3, 2024, CW-1 and CW-2 made a controlled purchase of two (2) pistols and ammunition from OLIVEIRA in Milford, Massachusetts. Prior to the controlled purchase, ATF agents met with and searched CW-1 and CW-2 for contraband with negative results. Agents equipped CW-1 and CW-2 with a UC vehicle and a recording device which recorded both audio and video; the device worked properly and recorded the transaction with OLIVEIRA. Agents then provided CW-1 with official government funds to purchase the pistols and ammunition. Surveillance personnel were assigned to the area of 27 Grove Street, Milford, Massachusetts. CW-1 and CW-2 were under constant surveillance by agents/officers during the operation. The CIs observed OLIVEIRA exit 27 Grove Street carrying a shoe box. CW-1 and CW-2 met with OLIVEIRA in the UC vehicle and purchased two (2) pistols and ammunition. CW-1 paid OLIVEIRA $3800 for the pistols and ammunition. After the transaction, CW-1 and CW-2 observed OLIVEIRA return to 27 Grove Street. CW-1 and CW-2 left the area and were

kept under surveillance as they proceeded to a prearranged meeting site. At the meeting site, CW-1 and CW-2 provided agents with a Glock, Model 19 Gen5, 9mm, pistol, serial number BUHH533, a Glock, Model 19 Gen5, 9mm, pistol, serial number BNSR564 and four (4) rounds of 9mm ammunition. Agents searched CW-1 and CW-2 for contraband and found none. I have reviewed the recording of the transaction, which confirmed CW-1 and CW-2's account that they purchased the pistols and ammunition from OLIVEIRA.

24. On September 25, 2020, SILVA entered the United States in Texas. SILVA was determined to be an alien in the United States who had not been admitted or paroled. SILVA was photographed and released into the United States. On November 5, 2022, Westboro, Massachusetts Police Officers arrested SILVA for state firearms violations. SILVA was photographed by Westboro Police during the booking process. I have reviewed a video that OLIVEIRA sent on April 19, 2024, to CW-2 of a male shooting the pistols. Based upon review of this video, the pistols being shot are the same pistols the CWs subsequently purchased from OLIVEIRA on April 27, 2024. The arrest photos of SILVA from the US Border Patrol and Westboro Police and the male shooting the pistols in the April 19 video is Marcos Alves SILVA.

25. On November 9, 2020, FERREIRA entered the United States in Texas and on July 11, 2023, re-entered the United States in Arizona. FERREIRA was photographed on both occasions by the Border Patrol. Following his unlawful entry into the United States on July 11, 2023, a thorough check of all relevant immigration databases was conducted and it was determined that FERREIRA neither sought nor received the express consent of the Secretary of the Department of Homeland Security or the Attorney General to apply for admission to the United States of America. I have reviewed and compared the above-mentioned photos of FERREIRA to

the videos of the gun buys on February 20, 2024, and March 11, 2024. The photos and the videos are of the same person – Rafaell Martins FERREIRA.

26. On July 29, 2019, OLIVEIRA entered the United States in New Mexico. OLIVEIRA was determined to be an alien in the United States who had not been admitted or paroled. OLIVEIRA was photographed and released into the United States. On June 28, 2022, Milford Police Officers arrested OLIVEIRA for state domestic violence violations. OLIVEIRA was photographed by Milford Police during the booking process. I have reviewed and compared the above-mentioned photos of OLIVEIRA to the videos of the gun buys on April 17, 2024, April 27, 2024, and September 3, 2024. The photos and the videos are of the same person – Vanderson Rocha OLIVEIRA.

27. Based on my training and experience in firearms, and consultation with ATF agents, the commercially manufactured firearms and all ammunition identified above were manufactured outside of the Commonwealth of Massachusetts, and, thus, had to travel in interstate commerce.

28. On August 5, 2024, James Diozzi, an ATF Inspector in the Boston Field Office, queried ATF's national data base of all federally licensed firearms dealers, and determined that FERREIRA, OLIVEIRA, and SILVA are not federally licensed firearms dealers.

**CONCLUSION**

29. Based on the above, I believe probable cause exists to conclude that FERREIRA, OLIVEIRA, and SILVA, without being a federally licensed dealer, did knowingly and willfully engage in the business of dealing in firearms, in violation of 18 U.S.C. §922(a)(1)(A), and, during that same time period, did knowingly combine, conspire, confederate and agree with each other and others, to engage in the business of dealing in firearms without a federally issued license to do so, in violation of 18 U.S.C. §371.

*John Mercer /by Paul G. Levenson*
John Mercer
Special Agent, ATF

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____
HON. PAUL G. LEVENSON
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS

on this __10th__ day of September, 2024